DANIELS *v.* NEWSOM.

4-8513

213 S. W. 2d 367

Opinion delivered June 21, 1948.

Rehearing denied October 4, 1948.

*Crumpler & O'Connor,* for appellant.

*T. O. Abbott,* for appellee.

GRIFFIN SMITH, Chief Justice. Ownership of a city lot in El Dorado is involved. Wilson G. Newsom claims

(a) through quitclaim deed of Ethel James, Receiver for Sewer District No. 4, executed January 21, 1943, and (b) by virtue of a deed from the Commissioner of State Lands, dated February 10, 1943. The State deed sought to convey the "Frl. C. Pt. 90 x 110 ft., Lot 6, Block 8, Kinard Subdivision." We agree with appellant that "Frl. C. Pt." as a description is too indefinite in a tax sale to vest title in particular property, and it conveyed nothing. If appellee prevails his ownership must stem from the Receiver's deed.

The cause was heard upon Daniels' substituted complaint, in which it was alleged that title to the property described in the margin [1] was acquired in 1920 when appellant purchased from W. J. Newsom, appellee's father. A contention is that the Receiver's deed failed in its purpose for want of authority by that official to effectuate a conveyance (a) because the statutory penalty of ten percent was exceeded, and (b) because all lands described in the Commissioner's report of sale were offered *en masse,* and for a sum in excess of the total charged against all the tracts. Numerous other irregularities were asserted.

Although there is a great deal of proof, some relating to the original sale under authority of the District's Commissioners, the trial Court held—and properly, we think,—that the proceeding in the instant suit was a collateral attack on the decree through which the District acquired title to the property; hence, extrinsic evidence could not be heard to impeach the decree. The record showed that a commissioner was appointed to conduct the sale, and that his report was duly made to the Court, and approved. Apparently no deed was executed, but a certificate of purchase was mentioned in the decree.

---

[1] [Being in Section 32, Township Seventeen South, Range Fifteen West, Union County], commencing at the northeast corner of the northeast quarter of the northeast quarter of said Section Thirty-two and running south 190 yards, thence west 40 feet, more or less, to the west side of the concrete sidewalk, thence west 304 feet to the point of beginning for this lot, thence running south 90 feet, thence west 110 feet, thence north 90 feet, and thence east 110 feet to the point of beginning for this lot; this lot being a part of Lot Six in Block Eight of the Kinard Subdivision to the Town of El Dorado, [according to plat on file, etc.].

Since the District was purchaser, and did not object to the Commissioner's failure to have a deed approved and delivered, its title was referable to the decree, and was as effective as though the formalities ordinarily attending a judicial sale had been meticulously complied with. If the Receiver was vested with power to sell the District's property—or as the only material issue here is whether the record sustains the Court's finding that the lot sold by the Receiver can be identified; and, if so, did it belong to the District when the Receiver acted.

As the complaint discloses, Lot Six of Block Eight lies within Section Thirty-two, Township Seventeen South, Range Fifteen West, Union County. South West Avenue (extending north and south) is immediately east of Section 32. The first transaction affecting the area involved is a deed from F. P. Stevenson to W. J. Newsom. The description begins at a point 190 yards (570 feet) due south of the northeast corner of the section line. It shows the so-called "floating" property within the quartersection, with a beginning 570 feet south of the northeast corner. This deed, however, conveyed a lot 90 feet north-south by 200 feet east-west. The same deed, however, conveyed a second lot, beginning where the east-west line mentioned in the first deed ended, and extending 430 feet west, thence south 90 feet, east 430 feet, north 90 feet, to the point of beginning. The two descriptions created the strip 630 by 90 feet heretofore referred to.

In 1920 W. J. Newsom conveyed to W. G. Newsom a lot 176 feet deep off the west end of the 630-ft. strip, but in describing the property the beginning was 570 feet south of the northeast corner of Section 32, "thence west 40 feet more or less to the west side of the concrete sidewalk, thence west 414 feet to the point of beginning for this lot, thence south 90 feet, thence west 176 feet," etc. Here, for the first time, in projecting the line west from a point 570 feet south of the northeast corner of Section 32, mention is made of 40 feet, and a sidewalk; but by adding 40, 414, and 176 feet the full east-west length of Lot 6 is found to be 630 feet, so the guiding point is still

east of the forty feet, and the 40-ft. strip is east of the west side of the sidewalk.

On the same day W. J. Newsom conveyed to W. G. Newsom, as just shown (January 21, 1920), W. J. Newsom conveyed to E. M. Daniels a lot 90 x 110 feet carved from Lot Six, and lying immediately east of the 176-ft. strip sold by W. J. to W. G. Newsom. The deed, as in the other conveyances, had its point of beginning 570 feet south of the section corner, "thence west 40 feet, more or less, to the west side of the concrete sidewalk, thence west 304 feet to point of beginning for this lot, thence running south 90 feet, thence west 110 feet, thence north 90 feet, and thence east 110 feet to the point of beginning for this lot." By adding 304 and 40 feet "as the point of beginning for this lot," as the deed says, the sum of 344 taken from the 630-ft. east-west measurement of Lot Six leaves a remainder of 286 feet, or an amount equal to the two lots lying to the west, one being 110-ft. in length, and the other 176.

Concurrently with the foregoing—January 21, 1920 —W. J. Newsom conveyed to Grover Sontag a lot 90 x 66 feet lying immediately east of the Daniels lot. In the deed to Sontag, the elder Newsom again picked up the point 570 feet south of the section corner, went west 40 feet more or less to the west side of the concrete walk, then west 238 feet "to the point of beginning for this lot," then south 90 feet, west 66 feet, north 90 feet, and east 66 feet to the point of beginning "for this lot." By adding the east-west measurements mentioned—238, 40, and 66-ft.—there is a total of 344 feet; hence the western boundary of the Sontag lot is the east boundary of the Daniels lot, and the full area of 630 feet is accounted for.

After executing the conveyances just described, W. J. Newsom still owned the property east of the three lots taken from the west end of the 630-ft. strip, or 278 feet. It was acquired by W. G. Newsom from Mrs. S. L. Carroll. In describing this lot the point of beginning was 570 feet south of the section corner, thence south 90 feet, west 278 feet, north 90 feet, and east 278 feet to the point

of beginning. It will be observed that in this deed, executed in 1938, no mention is made of the sidewalk, nor is there a reference to the 40 feet referred to in some of the other deeds.

The next transaction involves sale of the Daniels lot under the receivership. It is identified as "Center part of Lot Six, 90 x 117-ft., described as: Beginning NE corner of W. J. Newsom's lot, run W. 304-ft. for beginning, S. 90-ft., W. 117-ft., N. 90-ft., E. 117-ft. to beginning, Block Eight, Kinard Addition."

Can this lot be located?

The northeast corner of W. J. Newsom's lot would be a point 570 feet south of the northeast corner of Section 32. Proceeding west 304 feet a point east of the Daniels lot is reached. Because the property deeded by Mrs. S. L. Carroll to W. G. Newsom in 1938 definitely begins 90-ft. south of a point 570 feet south of the northeast corner of Section 32, it necessarily follows that this point is 660-ft. south of the section corner. From the point of beginning "for this lot," the direction is 278 feet west. This corresponds with the items of 238 and 40-ft. mentioned in the deed from W. J. Newsom to Grover Sontag, but it must be remembered that three lots had been taken from the west end of the 630-ft.—one 187-ft., one 110-ft., and the Sontag lot of 66-ft. This left 278-ft., 238-ft. of which was west of the 40-ft. strip; but, as has been shown, distance from the Daniels east line to "the northeast corner of the Newsom lot" is 344-ft. instead of 304. Nor does the Daniels lot occupy the "center part of Lot Six." Being 110-ft. in depth, a lot 176-ft. lies west of it, and 344-ft. are east. If in the center of Lot Six, there would be 260 feet of the parent lot on either side, irrespective of ownership.

Appellee testified that during the noon hour of the day of trial, while Court was in recess, he took a steel tape and measured *from the street* on South West Avenue to the east line of the property in litigation—the Daniels lot. The distance was 304 feet. The street had been established for many years: in fact, was there when

the witness was born. Effect of this testimony, if it could be received, is that the 40-ft. street, when added to 304 feet, would project the east-west line of the Newsom lot 344 west of the section line, and the Receiver's description would be nearer correct, although a strip seven feet wide is not accounted for by any record entries.

Newsom seeks to exclude certain evidence appellant thinks would show invalidity of the original' sale for want of power. He correctly takes the position that in a collateral attack the record alone may be considered, yet in effect he would reform the Receiver's deed by testifying that a correct description may be had by measuring from a point he thinks was *intended,* then going 304 feet west. But appellee cannot have the benefit he seeks by excluding everything but the record, then amplifying the record with his personal testimony.

We must assume that the notice of sale was in harmony with descriptions subsequently used, for the decree in the District's favor recites regularity. If this be true, and if we accept the description, ''Beginning [at the northeast] corner of W. J. Newsom's lot'' as the same point referred to in all of the deeds—that is, the northeast corner of section 32—then 304 feet west includes 26 feet of the Sontag lot. Since that lot, east and west, is 66 feet, the point of beginning in the Receiver's deed would be 40 feet east of the northwest corner of Sontag's line, thence south 90 feet, and west 117 feet. This would leave untouched 33 feet of the west side of the Daniels lot as described in the Receiver's deed; but, inasmuch as Daniels originally acquired 110 feet instead of 117, there is a discrepancy of seven feet. Add this, speculatively, to the undescribed 33 feet just mentioned, and the same total of 40 feet protrudes itself—indicating that the Commissioners and the Receiver had in mind that the W. J. Newsom lot began at a point 40 feet west of the northeast corner of section 32, but south of it.

There is no legal basis for holding that the west 33 feet of the Daniels lot was included in the sale. It was not described in any of the proceedings, and the power to sell was lacking. Intendment and the good office of equity

cannot be substituted for due process, however meritorious the result might be.

To hold that the sale was good as to the east 77 feet, but bad as to the west 33 feet, would measurably harmonize with descriptions, but would not comport with intent.

It follows that the decree must be reversed, with directions to quiet title in Daniels when necessary adjustments have been made. The Chancellor did not adjudicate other claims interposed; hence the cause is remanded with directions to dispose of the controversy in a manner not inconsistent with this opinion.